IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PAULA BRANDL. : CIVIL ACTION
: NO. 10-03512
v. :
:
ACE USA, et al. :
:

O'NEILL, J. January 14, 2011

## MEMORANDUM

Plaintiff Paula Brandl was employed by defendant ACE USA as an account coordinator from 2002 to 2008. On July 16, 2010, she filed a complaint against ACE USA; ACE INA Holding, Inc. (collectively, the ACE Defendants); ESIS, Inc.; Life Insurance Company of America, a/k/a Life Insurance Company of North America, a Cigna Company ("LINA"); and Cigna Group Insurance, a subsidiary of Cigna, asserting claims under the Employee Retirement Income Security Act, 1974, as amended, 29 U.S.C. § 1101 et seq., the Family and Medical Leave Act, 29 U.S.C. § 2001 et seq., the Pennsylvania Wage Payment and Collection Act, 43 P.S. § 260 et seq., and for common law breach of contract. Plaintiff asserts that she was improperly denied short-term disability and long term disability benefits and that ACE USA interfered with her right to take leave.

The ACE defendants seek to stay the proceedings before this Court and to compel arbitration based on the terms of ACE's Employment Dispute Resolution Policy.[1] Brandl argues that ERISA and her benefits plan dictate the remedy in the event of an adverse benefits

---

[1] The non-ACE defendants have not joined in the motion to stay.

determination and that her benefits plan does not include an arbitration provision. I find that Brandl's arbitration agreement is valid and that ERISA does not preclude arbitration of her claims against the ACE defendants. Accordingly I will grant the ACE defendants' motion to stay and to compel arbitration.

Also before me is an unopposed Rule 12 motion filed by defendant Life Insurance Company of America seeking to dismiss plaintiff's "Short Term Disability Claim" and "Pennsylvania Wage Collection Act and Breach of Contract Claims" against it for failure to state a claim upon which relief can be granted, to dismiss plaintiff's first amended complaint against "CIGNA Group Insurance" and to strike her jury trial demand. I will grant LINA's motion for the reasons stated below.

## BACKGROUND

On January 7, 2002 Brandl signed an application for employment at ACE USA, which stated, in relevant part, that:

> I AGREE THAT IN RETURN FOR BEING CONSIDERED FOR EMPLOYMENT AND/OR RECEIVING AN OFFER OF EMPLOYMENT, I WILL RESOLVE ANY DISPUTE ABOUT MY CANDIDACY FOR EMPLOYMENT, EMPLOYMENT, OR CESSATION OF EMPLOYMENT <u>EXCLUSIVELY</u> THROUGH THE INTERNAL AND EXTERNAL EMPLOYMENT DISPUTE RESOLUTION PROCESSES OF MY EMPLOYER WHICH INCLUDES FINAL AND BINDING **ARBITRATION** WITH A NEUTRAL ARBITRATOR. I UNDERSTAND THAT MY EMPLOYER ALSO AGREES TO FOLLOW THE DISPUTE RESOLUTION PROCESSES AND THAT COPIES OF THE POLICIES AND PROCEDURES DESCRIBING THE DISPUTE RESOLUTION PROCESSES ARE AVAILABLE TO ME.

(Doc. No. 5-2, at 32 (emphasis in original).)[2]

Brandl signed an employment offer letter from ACE USA on February 7, 2002, "agree[ing] to employment under the terms of [the] letter." (Doc. No. 5-2, at 35.) The offer letter stated, inter alia, that "the ACE Employment Dispute Resolution Program provides a quick, fair, process for resolving workplace disputes. The final step of the program includes mandatory and binding arbitration with a neutral third party arbitrator." (Id. at 34.)

Brandl began working for ACE USA on February 18, 2002. On February 19, 2002, she signed the ACE Employee Guide: Receipt and Agreement, which states: "[t]his is to acknowledge that I have received and will take the time to review the ACE Employee Guide available to me on ACE's intranet site. I agree that it is my responsibility to read the Employee Guide and to understand and abide by the rules, policies, procedures and standards set forth in the Guide." (Doc. No. 5-2, at 37.) The ACE Employee Guide includes an "Employment Dispute Arbitration Policy," that defines the scope of claims and potential claims that must be submitted to arbitration:

> This policy covers all employment-related disagreements and
> problems that concern a right, privilege or interest recognized by
> applicable law. Such disputes include claims, demands, disputes,
> controversies or actions under Title VII of the Civil Rights Act of
> 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991,
> the Equal Pay Act, the Age Discrimination in Employment Act, the
> Employee Retirement Income Security Act of 1974, the Fair Labor
> Standards Act, the Family Medical Leave Act, and any other
> federal, state or local, statute, regulation, ordinance or common law
> doctrine, regarding unfair competition, employment discrimination,
> retaliation, whistleblowing, wage and hour matters, conditions of

---

[2] Except for documents with numbered paragraphs, references to the record will be to the document number and pagination generated by the electronic case filing system identified on the top of each page of the documents filed by the parties.

employment or termination of employment.

(Doc. No. 5-2, at 11-12 (emphasis added).) The Employment Dispute Arbitration Policy further provides that

> it is the policy of the Ace Companies ("ACE") that arbitration by a neutral third party is the required and final means for the resolution of any employment-related legal claim not resolved by the internal dispute resolution processes.
>
> Both ACE and the employee will be bound by any decision made by a neutral arbitrator. If the employee or ACE does not abide by the Arbitrator's decision, either party may go to court to enforce the arbitrator's decision, but arbitration must be used before going to court. This policy prevents both ACE and the employee from going to court over employment-related disputes. . . .

(Doc. No. 5-2, at 11.)

On or about July 31, 2008, Brandl took leave from work for an illness and thereafter applied for short term disability benefits. On or about September 2, 2008, ACE USA advised plaintiff that her application for STD benefits was denied, claiming a lack of sufficient documentation from her physician. Plaintiff claimed she could not return to work due to the continuation of her illness.[3] Her supervisor informed her that if she could not return to work her last day of employment would be September 3, 2008. Brandl did not return to work.

Brandl appealed the denial of her STD benefit to ESIS, the STD plan administrator. On June 12, 2009, ESIS awarded plaintiff STD coverage for the period from July 21, 2008 to September 2, 2008 (approximately five weeks). Plaintiff appealed ESIS' award, as it did not include the full 26 weeks of STD benefits that plaintiff claims she was entitled to under the STD

---

[3] Plaintiff asserts that she "continued to seek medical treatment and was diagnosed with serious medical conditions including chronic Epstein-Barr virus in October 2008." (Doc. 9-2, at 3.)

plan. On or about May 3, 2010, ESIS awarded plaintiff additional STD benefits for the period from September 3, 2008 to on or about October 15, 2008.

On January 15, 2009, plaintiff applied for long term disability benefits. Plaintiff's claim for LTD benefits was denied on March 18, 2009. She appealed the LTD benefits denial and on June 2, 2010 her appeal was denied. On July 16, 2010, Brandl filed this action seeking a declaration that she is entitled to STD and LTD benefits, reinstatement to her employment upon recovery from her disability and compensatory, consequential and punitive damages. Plaintiff also claims that ACE USA interfered with her right to take leave pursuant to the FMLA, as she was not advised that she had a right to apply for FMLA leave.

Plaintiff's STD and LTD benefits were administered in accordance with a document titled "ACE Plan Administration (U.S.)." The ACE Plan Administration document states that in the event of an adverse benefit determination an employee will receive, inter alia, "[a] statement of your right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review," and "[a] statement explaining that you may have other voluntary alternative dispute resolutions." (Doc. 9-4, at 21.) In describing the procedure for appealing a claim, the ACE Plan Administration Document states that "[a]ll decisions [following an appeal] are final and binding unless determined to be arbitrary and capricious by a court of competent jurisdiction." (Doc. 9-4, at 22.) The ACE Plan Administration document further provides that benefits program participants are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974, including steps that plan participants may take to enforce their rights under ERISA. (Doc. 9-4, at 28.) It states that if a plan participant has "a claim for benefits which is denied or ignored, in whole or in part, then [he or she] may file suit in

state or federal court." (Id.)

ACE DEFENDANTS' MOTION TO COMPEL ARBITRATION AND FOR STAY

The Federal Arbitration Act provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Any "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." Id. § 4. To determine whether to compel arbitration of Brandl's claims against the ACE defendants, I must consider: (1) whether the parties agreed to arbitrate; (2) if so, whether Brandl's claims fall within the scope of the arbitration agreement; and (3) to the extent that her claims arise under ERISA, whether Congress intended her claims to be non-arbitrable. See Murphy v. Canadian Imperial Bank of Commerce, 709 F. Supp. 2d 242, 245-46 (S.D.N.Y. 2010); see also Gay v. Creditinform, 511 F.3d 369, 379 (3d Cir. 2007) ("A party seeking to avoid arbitration for a statutory claim has the burden to establish that Congress intended to preclude arbitration of the claim."); Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc., 247 F.3d 44, 54-55 (3d Cir. 2001) ("a court asked to stay proceedings pending arbitration must determine whether there is a valid agreement to arbitrate and, if so, whether the specific dispute falls within the substantive scope of that agreement"). Where there is a valid agreement to arbitrate, there is a presumption in favor of arbitration. Century Indem. Co. v. Certain Underwriters at Lloyd's London, 584 F.3d 513, 526 (3d Cir. 2009). "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983). A party opposing arbitration must show with

"positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986), quoting Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960).

Brandl entered into a valid and enforceable agreement to abide by the ACE Employment Dispute Arbitration Policy. On January 6, 2011, plaintiff moved for leave to amend her prior responses to the ACE defendants' motion to stay and to compel arbitration, arguing that under Nino v. Jewelry Exchange, 609 F.3d 191 (3d Cir. 2010), the ACE Employment Dispute Arbitration Policy is unconscionable and unenforceable.[4] I disagree. "An agreement to arbitrate may be unenforceable based on a generally applicable contractual defense, such as unconscionability." Alexander v. Anthony Int'l., L.P., 341 F.3d 256, 264 (3d Cir. 2003). However, the ACE Employment Dispute Arbitration Policy does not include the unreasonable arbitrator selection clause, five day filing window or provision requiring parties to bear their own fees, costs and expenses that rendered unconscionable the arbitration agreement in Nino. 609 F.3d at 199-205.

Further, "[u]nder Delaware law, a contract is rendered unconscionable [only] if one of the parties lacks meaningful choice and the contract terms unreasonably favor one party over the other. Unequal bargaining power, without more, is insufficient to hold an arbitration agreement unconscionable." Wells v. Merit Life Ins. Co., 671 F. Supp. 2d 570, 574 (D. Del. 2009); see also

---

[4] "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962). Although I need not consider the argument raised by plaintiff's motion to amend, I have done so. I note, however that the decision in Nino was: (a) available to plaintiff when she filed her previous responses to the motion; and (b) applies the law of the Virgin Islands when Delaware law governs the agreement to arbitrate.

Gilmer v. Interstate/Johnson Lane, Corp., 500 U.S. 20, 33 (1991) ("Mere inequality in bargaining power, however, is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context."); Lloyd v. MBNA Am. Bank, N.A., No. 00-109, 2001 WL 194300, at *4 (D. Del. Feb. 22, 2001) ("More than a disparity in bargaining power is needed to show that an arbitration agreement is unconscionable or unenforceable."). Plaintiff has not established that her agreement to arbitrate deprived her of a meaningful choice or that the terms of the contract unreasonably favor the ACE defendants. See Gonzalez v. Citigroup, No. 09-017, 2009 WL 2340678, at *2 (D. Del. Jul. 30, 2009) (finding "insufficient evidence to prove an absence of meaningful choice and unreasonably favorable terms in the arbitration agreements" to render them unconscionable and unenforceable); see also Brennan v. CIGNA Corp., 282 F. App'x 132, 136 (3d Cir. 2008) (finding an analogous arbitration agreement enforceable under Pennsylvania law where its terms were not "so one-sided as to be oppressive").

Plaintiff argues that even if her agreement to arbitrate is valid her claims should not be governed by the agreement because ERISA requires that the terms of the ACE Plan Administration document – referencing suit in state or federal court, but not arbitration – define the appropriate forum for her STD and LTD benefits claims. The ACE defendants argue that the ACE Employment Arbitration Policy specifically includes ERISA claims and that the proper forum for Brandl's claims against them is in arbitration. I agree with the ACE defendants.

The ACE Employment Dispute Arbitration policy "is intended to substitute final and binding arbitration for court action . . . ." (Doc. 5-2, at 12.) There is no question that claims involving benefits subject to an ERISA plan may be subject to arbitration. See Witkowski v. Welch, No. 92-0924, 1993 WL 69587, at *2 (E.D. Pa. Mar. 11, 1993) ("Statutory ERISA claims

as well as contractual claims involving an ERISA plan are subject to agreements to arbitrate."); see also Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1115-16 (3d Cir. 1993) (holding claims of ERISA violations are subject to arbitration pursuant to Section 2 of the FAA); Bird v. Shearson Lehman/American Express, Inc., 871 F.2d 292, 298 (2d Cir. 1989) (holding contractual claims arising under an ERISA plan may be arbitrated).

The ACE Employment Dispute Arbitration policy specifically provides that it "covers all employment-related disagreements and problems that concern a right, privilege or interest recognized by applicable law . . . includ[ing] . . . claims . . . under . . . the Employee Retirement Income Security Act of 1974 . . . ." (Doc. 5-2, at 11-12.) To the extent that the terms of the ACE Plan Administration document create an ambiguity regarding whether Brandl's claims are subject to arbitration, courts contemplating questions about the enforceability of similar arbitration agreements with similar competing documents have found that plaintiffs' ERISA claims should be submitted to arbitration. In Carver v. Global Sports, Inc., No. 00-139, 2000 WL 378072 (E.D. Pa. Mar. 28, 2000), the plaintiff entered into an employment contract containing an arbitration clause and subsequently brought an action pursuant to ERISA Section 502(a)(1)(B) to recover benefits due under an ERISA plan. The court held that the arbitration clause in the employment contract covered the dispute and that the matter was referable to arbitration. Id. at 3. Likewise, in Murphy v. Canadian Imperial Bank of Commerce, 709 F. Supp. 2d 242, 245-47 (S.D.N.Y. 2010) (internal citations and quotations omitted), the court found that the plaintiff's claim for severance benefits allegedly withheld in violation of ERISA was subject to arbitration: "Even if there was any ambiguity as to the scope of the claims that fall within the Arbitration Provision because of [language in his severance agreement reserving his rights to pursue claims under the

Severance Plan], the Supreme Court has instructed that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." In contrast, in <u>United Steelworkers of America, AFL-CIO-CLC v. Rohm and Haas Co.</u>, 522 F.3d 324, 332 (3d Cir. 2008), the court declined to require arbitration where the collective bargaining agreement providing for arbitration did not have any "specific language addressing the employee's rights to disability benefits."

Brandl's agreement to arbitrate merely governs the parties' choice of forum for her current claims. It did not modify her right to appeal an adverse benefits determination or abridge her right to bring an action under ERISA for improper denial of Plan benefits. "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum." <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 628 (1985); <u>see also</u> <u>Johnson v. West Suburban Bank</u>, 225 F.3d 366, 370 (3d Cir. 2000) ("In general, nothing prevents contracting parties from including a provision in their agreements that refers statutory claims arising under the contract to arbitration."); <u>Viggiano v. Shenango China Div. of Anchor Hocking Corp.</u>, 750 F.2d 276, 279-280 (3d Cir. 1984) ("[T]he presumption in favor of arbitrability continues in full force, even though the controversy affects an employee benefit plan."). Further, although the ACE Plan Administration document does not reference arbitration it does not affirmatively foreclose arbitration of claims pertaining to the denial of ERISA benefits. "In the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." <u>AT&T Techs., Inc. v. Commc'ns Workers of Am.</u>, 475 U.S. 643, 647 (1986), quoting <u>Steelworkers v. Warrior & Gulf</u>

Navigation Co., 363 U.S. 574, 584-85 (1960)

Plaintiff has not shown that Congress intended her claims to be non-arbitrable. "If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent 'will be deducible from [the statute's] text or legislative history,' . . . or from an inherent conflict between arbitration and the statute's underlying purposes." Shearson/Am. Express Inc. v. McMahon, 482 U.S. 220, 227 (1987), quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 632-37 (1985). Nothing in the text of ERISA or its legislative history explicitly precludes arbitration. See Air Line Pilots Ass'n v. Northwest Airlines, Inc., 627 F.2d 272, 275-76 (D.C. Cir.1980) ("Nor are we persuaded that the legislative history of ERISA reveals an affirmative Congressional intention to do away with all compulsory arbitration for pension matters."); Fox v. Merrill Lynch & Co., Inc., 453 F. Supp. 561, 566 (S.D.N.Y. 1978) ("The Court finds no basis in connection with claims under section 502(a)(1)(B) of ERISA to deny effect to Congress' intention, expressed in the Federal Arbitration Act, to promote arbitration in accord with the intent of the parties.").

I find that plaintiff agreed that she would resolve her employment-related legal disputes, including disputes pertaining to ERISA benefits, by resort to a neutral third-party arbitrator and I will compel arbitration of her claims against the ACE defendants.

Further, a party to a valid and enforceable arbitration agreement is entitled to a stay pending arbitration. 9 U.S.C. § 3. See Lloyd v. Hovensa, 369 F.3d 263, 269 (3d Cir.2004) (holding that the FAA affords a court no discretion to dismiss a case where a party applies for a stay pending arbitration). Because the factual and legal issues implicated by Brandl's claims against the ACE defendants are intertwined with the factual and legal issues implicated by her

claims against the non-ACE defendants, after disposition of the matters raised in LINA's unopposed Rule 12 motion I will stay the proceedings pending the resolution of arbitration. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 21 n.23 (1983) ("In some cases, of course, it may be advisable to stay litigation among nonarbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket.") (internal citations omitted); Miron v. BDO Seidman, LLP, 342 F. Supp. 2d 324, 334 (E.D. Pa. 2004) ("Although these claims are not subject to arbitration, the FAA's requirement that a court stay 'the trial of the action' suggests that the proceedings must be stayed in their entirety, even when the action encompasses both arbitrable and non-arbitrable claims."); Davies v. Ecogen Inc., No. 98-299, 1998 WL 229780 at *1 (E.D. Pa. Apr. 16, 1998) ("[C]ourts have typically granted stays when there are both arbitrable and non-arbitrable claims in the same action and significant overlap exists between parties and issues.").

## LIFE INSURANCE COMPANY OF NORTH AMERICA'S UNOPPOSED RULE 12 MOTION

### SHORT TERM DISABILITY CLAIM AGAINST LINA

To the extent that plaintiff's "Short Term Disability Claim" can be construed as a claim against LINA, LINA seeks to dismiss the claim against it. Plaintiff pleads that defendant ESIS, Inc. is the administrator of the STD Plan. (Doc. 4, at ¶ 21). Her First Amended Complaint contains no allegations that LINA had a role in her claims pertaining to the STD Plan. She does not allege that LINA issued or underwrote the STD Plan or that it administered her claims under the STD Plan.

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a complaint must state "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Wilkerson v. New Media Tech. Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). The Court of Appeals has made clear that after Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1955, 173 L. Ed. 2d 868 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 129 S. Ct. at 1949.

Plaintiff has not pled any facts creating a reasonable expectation that discovery would reveal evidence that LINA could be liable for wrongful denial of her STD benefits. Wilkerson v. New Media Tech. Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008), quoting Twombly, 550 U.S. at 556 (The complaint must state "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."). Accordingly, I will dismiss plaintiff's Short Term Disability claim against LINA.[5]

## PENNSYLVANIA WAGE PAYMENT AND COLLECTION ACT AND BREACH OF CONTRACT CLAIMS

LINA also seeks to dismiss plaintiff's Pennsylvania Wage Payment and Collection Act and Breach of Contract Claims against it, arguing that such claims are preempted by ERISA. "To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 129 S. Ct. at 1949. Plaintiff alleges that LINA improperly denied her

---

[5] LINA has not moved to dismiss plaintiff's "Long Term Disability Claim" against it and therefore remains a party to this action following disposition of its Rule 12 Motion.

request for LTD benefits. As pled, her claim against LINA "challeng[es] the quantum of benefits due under an ERISA-regulated plan," a claim that is "completely preempted" under ERISA's civil enforcement scheme. Przybowski v. U.S. Healthcare, 245 F.3d 266, 272 (3d Cir. 2001).

The Court of Appeals has held that claims such as Brandl's brought pursuant to the Pennsylvania WPCL are preempted by ERISA. See, e.g., McMahon v. McDowell, 794 F.2d 100, 105 (3d Cir. 1986) (affirming district court's holding that "plaintiff's state law [WPCL] claims for fringe benefits and pension contributions are preempted by ERISA . . . ."); McBride v. Bell of Pa., No. 89-0243, 1989 WL 71545, at *4 (E.D. Pa. June 27, 1989) (granting defendant's motion to dismiss plaintiffs WPCL claim "insofar as the claim related to an employee benefit plan subject to ERISA . . . ."); see also Aetna Health Inc. v. Davila, 542 U.S. 200, 209 (2004) ("any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted"). The Court of Appeals also has held that state law breach of contract claims are preempted by ERISA. Przybowski, 245 F.3d at 278 (suits against insurance companies for denial of benefits, "even when the claim is couched in terms of . . . breach of contract", are preempted by ERISA); accord Deegan v. Hartford Life and Accident Ins. Co., No. 06-2695, 2006 WL 3052814, at *2 (E.D. Pa. Oct. 24, 2006) (breach of contract claim "clearly 'relates to' the benefit plan [and] is expressly preempted by ERISA"). Accordingly, I will dismiss plaintiff's WPCL and breach of contract claims against LINA.

CLAIMS AGAINST CIGNA GROUP INSURANCE

Rule 17(b) of the Federal Rules of Civil Procedure sets the standard for a party's capacity to be sued. LINA has moved to dismiss the claims against CIGNA Group Insurance, arguing that

it is not a distinct legal entity capable of being sued and is therefore not a "person" over whom the court may have jurisdiction. Plaintiff has not opposed LINA's motion. Therefore I will dismiss the claims against CIGNA Group Insurance.

## JURY TRIAL DEMAND

Finally, LINA asks that I strike plaintiff's demand for a jury trial with respect to plaintiff's claims under Section 502(a)(1)(B) of ERISA. Federal Rule of Civil Procedure 12(f) provides that the court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Court of Appeals has held that there is no right to a jury trial on claims brought pursuant to Section 502(a)(1)(B) of ERISA. Cox v. Keystone Carbon Co., 894 F.2d 647, 649 (3d Cir. 1990), cert. denied 498 U.S. 811 (1990); see also Pane v. RCA Corp., 868 F.2d 631, 635-37 (3d Cir.1989) (finding district court did not err in striking jury trial demand on plaintiff's claims under ERISA Section 502(a)); Thomas v. Kimberly-Clark Corp., No. 07-3899, 2008 WL 4977762, at *3 n.5 (E.D. Pa. Nov. 20, 2008) (dismissing demand for jury trial on claim for benefits under ERISA Section 502(a)(1)(B)). Accordingly, I will strike Brandl's demand for a jury trial with respect to her ERISA claims for STD and LTD benefits.

An appropriate Order follows.